Settle order promptly on notice.

**Jean TARDAN et al., Plaintiffs,**

**v.**

**CHEVRON OIL COMPANY (The California Company Division) and State Mineral Board of the State of Louisiana, Defendants.**

**Civ. A. No. 71–675.**

United States District Court, E. D. Louisiana, New Orleans Division.

Sept. 29, 1971.

---

Cyril F. Dumaine, Amos L. Ponder, Jr., Trial Atty., New Orleans, La., for plaintiffs.

John L. Madden, Baton Rouge, La., for State Mineral Board.

Lawrence K. Benson, New Orleans, La., for Chevron Oil Company.

## JUDGMENT

R. BLAKE WEST, District Judge.

In this diversity action, the plaintiffs, heirs of one Jules Lapene, seek to remove a cloud on their alleged title to two hundred and thirty-three acres of oil-rich water bottoms, ownership of which is claimed by the State of Louisiana, and on which the Louisiana State Mineral Board has granted mineral leases to Chevron Oil Company. Named defendants are Chevron and the Mineral Board. At issue before the Court is defendants' motion to dismiss, based upon their con-tentions, first, that the State (a) in its capacity as defendant-lessor and (b) in its capacity as a sovereign State claiming ownership to the disputed water bottoms, is an indispensable party to this litigation[1]; and second, that the present suit against the State Mineral Board constitutes an unauthorized action in this Court against the State of Louisiana in contravention of the provisions of the Eleventh Amendment of the United States Constitution.

For the reasons set forth hereinafter, it is the opinion of this Court that defendants' motion should be granted.

■ Considering the contentions of defendants in the order presented, the Court holds that, pursuant to the "equity and good conscience" test set forth in Rule 19(b) of the Federal Rules of Civil Procedure, the State of Louisiana is not an indispensable party and that, in a proper forum, i. e., a State District Court, the instant suit can properly be brought against the Mineral Board and its lessee alone.

Rule 19(a) and (b) provide:

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties, subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in

---

[1]. If the state is a party to the suit, the court is without jurisdiction, because of the Eleventh Amendment, as per defendants' contention Two.

a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

In accordance with Rule 19, other considerations aside, this Court sees no reason why, "in equity and good conscience", this action "should not proceed among the parties". The Supreme Court discussed the application of Rule 19 in Provident Tradesmens Bank & Trust Co. v. Patterson [2] :

"The decision whether to dismiss (i. e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him."

▮ It is recognized that the watchwords of Rule 19 are "pragmatism and practicality" [3]. There is nothing to suggest that any undue or unreasonable results might follow from permitting this suit to proceed in a proper forum without requiring the State to be joined as a party defendant. Indeed, the Louisiana Supreme Court, in identical actions to remove a cloud on title, has held that the State is not an indispensable party.[4] The Court recognizes that indispensability of parties is a matter of federal law,[5] yet "state law determines the interests of the parties" [6]. Since the Louisiana Supreme Court considers the State Mineral Board a sufficient and appropriate party to represent the State's interest in actions to remove a cloud on title, this Court is of the opinion that it cannot properly require the State to be joined in such suit as an indispensable party.

As this suit is not barred by the failure to join the State as an indispensable party, the Court must now look into the question of its jurisdiction over an action against the Mineral Board in the light of the provisions of the Eleventh Amendment. As stated previously, defendants' second contention is that this Court is without jurisdiction in an action against the Board because such suit

2. 390 U.S. 102, 110, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968).

3. Schutten v. Shell Oil Co., 5 Cir., 1970, 421 F.2d 869.

4. Daigle v. Pan American Production Co., 236 La. 578, 108 So.2d 516 (1959);

Walmsley v. Pan American Petroleum Corp., 244 La. 513, 153 So.2d 375 (1963).

5. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. at 125 n. 22, 88 S.Ct. at 746 n. 22.

6. Kuchenig v. California Co., 5 Cir., 1965, 350 F.2d 551, 556.

constitutes an action "against one of the United States", proscribed by the Eleventh Amendment.[7] Respecting the mandate of this constitutional provision, the issue for this Court's determination is whether or not the Board is a separate corporate entity from the State so as to be outside the purview of the Eleventh Amendment.

In seeking to ascertain the nature and status of the Mineral Board, this Court must regard that body from two perspectives. The Court must take into account the relevant state law, and yet it cannot be unmindful of what higher federal courts perceive to be the state law as to the status of the Mineral Board.

■ The State Mineral Board was created by Act 93 of 1936 as a " * * * body corporate * * * [which] may sue and be sued, and shall possess in addition to the powers herein granted, all the usual powers incident to corporations"[8]. However, such a statutory formulation *per se* cannot be dispositive of the issue at hand, as the Court respects and adheres to the law as set forth by the United States Court of Appeals for the Fifth Circuit in Louisiana Land and Exploration Co. v. State Mineral Board[9]. In that case, the plaintiff sought to enjoin the State Mineral Board from soliciting bids or from granting leases on lands which the plaintiffs allegedly owned. Judge Borah held that such a suit is barred by the Eleventh Amendment "not because it is a suit against the Board, but because it is, in effect, a suit against the State"[10]. In analyzing the status and nature of the Board, the Fifth Circuit interpreted the law of Louisiana as set forth in State v. Texas Co.[11] in which the Louisiana Supreme Court allowed suit by the State to cancel a mineral lease, even though the State Mineral

Board had been designated the agency to institute such actions. The Louisiana Court held that the State Mineral Board:

" * * * has been designated merely the agent of the state to supervise and handle that portion of its affairs which deals with the development of its lands for mineral purposes, and to this end the agent is permitted the right, concurrently with the principal (state), to institute actions in nullity. The board may be likened to an agent of an individual property owner who (agent) has been granted full, but not exclusive, authority in the management and supervision of the owner's holdings, with power to bring suits respecting the property."[12]

This supervising agency concept was held, by the Fifth Circuit to signify that the Mineral Board was not a separate body from the State. This Court is of the opinion that it is bound to follow the lead of the Fifth Circuit in *Louisiana Land and Exploration Co.*

The plaintiffs argue that this Court is no longer bound by dictates of *Louisiana Land and Exploration Co.* in the light of intervening state court decisions in *Daigle* and *Walmsley*, supra, which, the plaintiffs assert, alter the legal status of the State Mineral Board. In *Daigle*, the Louisiana Supreme Court allowed suit to be brought against the State Mineral Board to remove a cloud on title. Recognizing that the Mineral Board is merely an "agent" to supervise a portion of the state's affairs, the Louisiana Supreme Court permitted the action as " * * * the relief sought is not that the defendant be ordered to disclaim title or make good the asserted title [which the Mineral Board does not have] * * * but the cancellation and erasure from the public records of a recorded instrument

---

7. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State * * *."

8. L.S.A.–R.S. 30:121.

9. 5 Cir., 1956, 229 F.2d 5.

10. 229 F.2d at 8.

11. 205 La. 417, 17 So.2d 569 (1944).

12. 17 So.2d at 572.

operating as a cloud on plaintiff's title".[13]

This Court is aware that in Kuchenig v. California Co.[14] a United States District Court held that an action seeking cancellation of a mineral lease brought against the State Mineral Board was "not an action against the State", and permitted the suit in federal court. The District Judge in *Kuchenig* read *Daigle* and *Walmsley* as providing new and additional guidelines for a court to consider in determining the status of the State Mineral Board, namely that the Mineral Board should not be considered a separate body from the State.

This Court, however, is not disposed to deviate from the holding of the Fifth Circuit in the *Louisiana Land* case. This Court has examined the *Daigle* and *Walmsley* holdings and does not feel that they warrant a departure by this Court from Judge Borah's earlier opinion. To be sure, the Louisiana courts have permitted an action to be brought against the State Mineral Board. However, such decisions do not necessarily reflect on the basic structure of the State Mineral Board, especially with regard to whether or not the Board is entirely separate from the State. As stated by the Fifth Circuit, " * * * the fact that the legislature chose to call it a corporation does not alter the [State Mineral] Board's characteristics so as to make it something other than what it actually is, a mere agent of the State".[15] In examining state court decisions on the State Mineral Board, questions regarding the separate nature of the Mineral Board are generally subservient to and subsumed by questions regarding the suability *per se* of the Mineral Board. There has not been the necessity for state courts to distinguish between the Board's being a separate entity from the state and the Board's being an arm of the state. In both situations, suits are permissible in the Louisiana courts.

■ This Court is unwilling to accept the notion that the State Mineral Board is a separate body from the State in the absence of more emphatic state pronouncements in this area. In Louisiana Highway Commission v. Farnsworth [16] the Fifth Circuit held that suit against the Louisiana Highway Department was not a violation of the Eleventh Amendment. The Court, however, was acting upon clear language of the Louisiana Supreme Court in Saint v. Allen [17] that the Highway Commission was a "distinct legal entity from the state". Such clear language is not found in *Daigle* and *Walmsley*. Accordingly, it is the opinion of this Court that the State Mineral Board must be considered a mere agent or arm of the State of Louisiana.

Having concluded that the Mineral Board is not a separate entity from the State, this Court must now hold that suit against the State Mineral Board (i. e., the State) can be brought only in the state courts of Louisiana, as required by the Louisiana Constitution.

"The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies * * *. No suit authorized under this constitutional provision shall be instituted in any court other than a Louisiana State court." [18]

It is established that a State can consent to suit in its own courts without waiving its Eleventh Amendment protection. "The history of sovereign immunity and the practical necessity of

---

13. 108 So.2d at 518.

14. E.D.La., 1964, 233 F.Supp. 389.

15. Louisiana Land and Exploration Co. v. State Mineral Board, 5 Cir., 1956, 229 F.2d 5, 8.

16. 5 Cir., 1935, 74 F.2d 910.

17. 172 La. 350, 134 So. 246, 249 (1931).

18. L.S.A.Const. Art. III, § 35.

unfettered freedom for government from crippling interferences require a restriction of suability to the terms of the consent, as to persons, courts and procedures." [19]

Thus, in accordance with the provisions of the Eleventh Amendment, this Court is without jurisdiction in a suit against the Louisiana State Mineral Board, and the motion of the defendants to dismiss is granted.

19. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed.2d 1121 (1944). See also: Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).